# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SAFE HOME CONTROL, INC., a Delaware corporation,<br><br>**Plaintiff,**<br><br>vs.<br><br>**IMI MARKETING, INC.** a California corporation d/b/a/ INTEGRITY ALARMS, and **MIKE NELSON**,<br><br>**Defendants.** | **MEMORANDUM DECISION AND ORDER GRANTING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**<br><br>**Case No. 2:18-cv-913**<br><br>**Judge Clark Waddoups** |

Before the court is the Motion to Dismiss for Lack of Jurisdiction (ECF No. 5) by Defendants IMI Marketing, Inc.[1] and Mike Nelson ("Mr. Nelson"). The motion has been fully briefed, and the court heard argument on the same on April 22, 2019. Having reviewed the pleadings and materials submitted and considered the arguments of counsel, the court now enters this order **GRANTING** Defendants' motion to dismiss.

## BACKGROUND

Plaintiff Safe Home Control, Inc. is an authorized dealer for ADT alarms with its principal place of business in Utah. (ECF No. 2, at ¶¶ 1, 8, Compl.) In approximately November 2016, Plaintiff and Mr. Nelson entered into a relationship by which Defendants provided alarm system sales and installations services for Plaintiff, and Plaintiff paid Defendants for each alarm system that they sold and installed. *Id.* at ¶¶ 11–20. Defendants ordered all equipment using Plaintiff's account with its distributor, and Plaintiff deducted the cost of that

---

[1] Defendants assert that IMI MKTG, LLC, a Delaware limited liability company, and not IMI Marketing, Inc., a California corporation, is the entity of interest in this action. The court finds this distinction is immaterial for purposes of this Order, as it does not have jurisdiction over either entity.

equipment from the amount it paid to Defendants. *Id.* at ¶¶ 26, 27. The parties' relationship was not set forth in a written agreement. *Id.* at ¶ 19. None of Defendants' sales and installations were performed in Utah. (ECF No. 5-1, at ¶ 16, Dec. of Mr. Nelson.)

In mid-2018, Defendants threatened to sue Plaintiff regarding the amounts Plaintiff was paying them and deducting for equipment costs. (ECF No. 2, at ¶¶ 23–25, 30–32, Compl.) Plaintiff filed this action to obtain declaratory relief and an order declaring the specifics of its relationship with Defendants. By motion filed December 20, 2018, Defendants allege that this court lacks personal jurisdiction over them and move to dismiss Plaintiff's action.

## ANALYSIS

Defendants move to dismiss Plaintiff's Complaint under Rule 12(b)(2) of the Federal Rule of Civil Procedure, arguing that they are not subject to personal jurisdiction in this District. When jurisdiction is contested, the plaintiff has the burden of proving that proper jurisdiction exists. *See Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1075 (10th Cir. 1995). Plaintiff need only make a prima facie showing of personal jurisdiction at this preliminary state of litigation. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (citing *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995)). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Free Speech v. Fed. Election Comm'n*, 720 F.3d 788, 792 (10th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In determining whether a plaintiff has made such a showing, the court accepts the allegations in the complaint as true and resolves all factual disputes in the plaintiff's favor. *See Rambo v. American Southern Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988).

To show that personal jurisdiction exists over Defendants, Plaintiff must establish first, that jurisdiction is authorized under Utah law and second, that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment. *See Far West Capital*, 46 F.3d at 1074. The Tenth Circuit has recognized that the "jurisdictional inquiry in Utah diversity cases is reduced to a single question: did the defendants have sufficient 'minimum contacts' with the state of Utah to establish personal jurisdiction over them?" *Rusakiewicz v. Lowe*, 556 F.3d 1095, 1100 (10th Cir. 2009) (citation omitted).

A defendant is held to have minimum contacts with a forum where he "has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal quotation marks and citations omitted). However, "the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Walden v. Fiore*, 571 U.S. 277, 285–86 (2014) (citing *Burger King Corp.*, 471 U.S. at 478). While a defendant's contacts with the forum State "may be intertwined with his transactions or interactions with a plaintiff," their relationship with the plaintiff, standing alone, "is an insufficient basis for jurisdiction." *Id.* at 286. In order to authorize jurisdiction, a defendant's conduct in a state "must have a broader effect on the forum itself—something *beyond* the effect felt by the plaintiff alone." *Younique, L.L.C. v. Youssef*, No. 2:15-cv-783, 2016 WL 6998659, at *7 (D. Utah Nov. 30, 2016) (emphasis in original).

Defendants assert, and Plaintiff does not contest, that they were never licensed in Utah; never held an office in Utah; never owned or leased any land in Utah; never maintained any employees or accounts in Utah; never resided in Utah; never maintained a phone or fax listing in

Utah; never advertised in Utah; never paid taxes in Utah; never recruited employees in Utah; and never sold or installed a single alarm system in Utah. (ECF No. 5-1, at ¶¶ 6–16, Dec. of Mr. Nelson.) Defendants therefore argue that their only contacts with Utah are limited to its relationship with Plaintiff and are thus insufficient to establish jurisdiction.

Plaintiff offers seven facts, supported by the affidavit of its owner and CEO,[2] to attempt to show that Defendants maintained minimum contacts with Utah: 1) Mr. Nelson reached out to Plaintiff in Utah to become Plaintiff's sub-dealer; 2) Mr. Nelson personally visited Utah to discuss the arrangement; 3) Defendants sent customer contracts to Utah; 4) Defendants purchased all their equipment through Plaintiff in Utah; 5) Defendants relied on Plaintiff's Utah support staff; 6) Defendants relied on Plaintiff's Utah team to send invoices and collect payments; and 7) Defendants' threatened claims arise from activities performed in Utah. (*See* ECF No. 12-1, at ¶¶ 11–29, Dec. of Michael Birchall.) None of these assertions, neither individually nor collectively, establishes that Defendants had contacts with Utah that extended beyond its relationship with Plaintiff. *See Walden*, 571 U.S. at 285–86; *Younique, L.L.C.*, 2016 WL 6998659 at *7.

That Mr. Nelson reached out to Plaintiff in Utah and physically traveled to the state in order to discuss a potential relationship with Plaintiff does not have a "broader effect on [Utah] . . . *beyond* the effect felt by [P]laintiff." *Younique, L.L.C.*, 2016 WL 6998659 at *7. Nor does the fact that Defendants sent customer contracts and orders to Plaintiff—neither action implicated or affected anyone in Utah other than Plaintiff, as the contracts were not conducted, and the orders were not fulfilled, in the state. Defendants' reliance on Plaintiff's support staff also did not affect Utah, or anyone in Utah other than Plaintiff. Similarly, even if Defendants'

---

[2] While Defendants contest Plaintiff's characterization and weight of some of these facts, on a motion to dismiss, the court accepts these facts as true.

"threatened claims" concerning the pay that they received and whether Plaintiff can terminate the parties' relationship arose out of Utah activities, no one in Utah but Plaintiff will feel their affect—they do not have the required "broader effect" on the state. *Id.* Finally, although Plaintiff's Utah team serviced some of Defendants' accounts, Plaintiff's affidavit establishes that it did so by choice. (*See* ECF No. 12-1, at ¶ 16, Dec. of Michael Birchall (noting that Plaintiff "retained the right to keep [those] accounts in-house").) Plaintiff's unilateral action "'is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction.'" *Walden*, 571 U.S. at 284 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)). Defendants' only link to Utah is its relationship with Plaintiff. This is not enough to authorize jurisdiction.

Plaintiff ignores *Walden* and argues the court should follow the guidance of the Tenth Circuit in *AST Sports Sci., Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054 (10th Cir. 2008). There, the court found that jurisdiction existed because the facts showed "that the parties pursued a continuous course of dealing" in the forum State. *Id.* at 1059. But the facts of *AST* are significantly, and materially, different from those before the court here. In *AST*, the defendant, a British corporation whose president formerly lived in Colorado, reached out to the plaintiff, a Colorado corporation, and suggested that they enter into a relationship by which it would distribute the plaintiff's products in England. The parties entered into a written agreement and agreed that Colorado law would govern it. The president of the defendant regularly visited Colorado and meet with the plaintiff on these trips. The defendant placed orders from plaintiff, which plaintiff shipped from Colorado. This relationship continued for approximately seven years. The same cannot be said here. Mr. Nelson was never a resident of Utah and only visited the state twice (ECF No. 5-1 at ¶ 21, Dec. of Mr. Nelson), the parties did not enter into a written

contract by which they agreed Utah law would govern their agreement, their relationship lasted less than three years, and there is no allegation that Plaintiff shipped anything from Utah. Rather, all equipment that Defendants received came directly from Plaintiff's supplier, and Defendants picked it all up in California. (*See* ECF No. 12-1 at ¶ 23, Dec. of Michael Birchall; ECF No. 13-1 at ¶ 8, Supp. Dec. of Mr. Nelson.) The facts here do not establish that the parties pursued a continuous course of dealing in Utah. Rather, they indicate that under the parties' agreement, practically all of Defendants' dealings occurred outside of the state, as they did not sell or install a single alarm system in Utah. (ECF No. 5-1, at ¶ 16, Dec. of Mr. Nelson.)

Defendants' only link with the state of Utah is its relationship with Plaintiff. Defendants did not therefore maintain minimum contacts with Utah sufficient to authorize jurisdiction over them. Because Plaintiff has failed to establish a prima facie showing that Defendants maintained minimum contacts with the state of Utah, the court need not determine whether its exercise of jurisdiction over Defendants would offend the due process clause of the Fourteenth Amendment.

## CONCLUSION

For the reasons stated above, the court **HERBY GRANTS** Defendants' Motion to Dismiss for Lack of Jurisdiction (ECF No. 5). Plaintiff's action is **HEREBY DISMISSED WITHOUT PREJUDICE**.

DATED this 1st day of May, 2019.

BY THE COURT:

_____
Clark Waddoups
United States District Judge